1

2

3

4
                    UNITED STATES DISTRICT COURT
5                   WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
6
STEVEN DARBY MCDONALD,                )
7                                     )
                    Petitioner,       )      Case No. C07-0135-JCC-BAT
8                                     )
       v.                            )
9                                     )      ORDER OF DISMISSAL
DOUGLAS WADDINGTON,                   )
10                                    )
                    Respondent.       )
11 _____ )

12        This matter comes before the Court on Petitioner Steven Darby McDonald's Amended

13 Petition for Writ of Habeas Corpus (Dkt. No. 12), the Report and Recommendation of United

14 States Magistrate Judge Brian A. Tsuchida ("R&R") (Dkt. No. 79), and Petitioner's Objections

15 to the R&R (Dkt. No. 81).

16                            **BACKGROUND**

17        Petitioner is a state prisoner in Monroe, Washington, serving a life sentence without the

18 possibility of parole pursuant to a conviction for first-degree arson, his "third strike" under

19 Washington's Persistent Offender Accountability Act. In 1996, a jury convicted Petitioner of

20 first- and second-degree arson for setting fire to a doormat outside the motel room of a sleeping

21 family. *See State v. McDonald*, No. 50206-9-I, 2004 WL 1147204, at *1–2 (Wash. Ct. App.

22 2004). The Washington Supreme Court remanded for a new trial, finding that the trial court

23 failed to inquire into a conflict of interest between Petitioner and his standby counsel. *State v.*

ORDER OF DISMISSAL -1

*McDonald*, 22 P.3d 791 (Wash. 2001). During his second trial in 2002, Petitioner again represented himself and was again convicted of first- and second-degree arson. *See McDonald*, 2004 WL 1147204, at *2.[1]

Proceeding *pro se* on a 28 U.S.C. § 2254 petition for habeas corpus, Petitioner seeks a reversal of his conviction for first-degree arson. (Am. Pet. 42 (Dkt. No. 12-2).) He has exhausted his state remedies, as required by 28 U.S.C. § 2254(b)(1). (*See* Resp't Answer 6 (Dkt. No. 24).)

Petitioner presents five grounds for relief in his amended petition:[2]

1. The trial court offered only to appoint unqualified counsel, violating Petitioner's right to counsel. (*See* Am. Pet. 2 (Dkt. No. 12-2).)
2. The state's use of ruined and irrefutable evidence violated Petitioner's right to due process. (*See id.* 10.)
3. The trial court's restrictions on cross-examination prohibited Petitioner from eliciting exculpatory facts and presenting a defense, thereby violating his right to confront witnesses against him. (*See id.* 21.)
4. Removal of vital testimony from Petitioner's trial transcript violated his right to due process and his right to direct appeal. (*See id.* 30.)
5. Insufficient evidence supported Petitioner's convictions, violating his right to due process. (*See id.* 39.)

In addition, Petitioner requests an evidentiary hearing on each of the grounds and appointment of counsel. (*Id.* 42.)

After an extensive review of the amended petition, United States Magistrate Judge Brian A. Tsuchida concluded that Petitioner failed to show cause for relief and recommended that Petitioner's § 2254 habeas corpus petition be denied and dismissed with prejudice. (*See* R&R 35 (Dkt. No. 79).) Petitioner presents six objections to the R&R, which the Court reviews de novo. *See* 28 U.S.C. § 636(b)(1)(C).

---

1. The facts relating to Petitioner's trial and conviction are set forth in the R&R.
2. Petitioner's sixth ground for petition was filed after the statute of limitations had run and, therefore, is not considered in this Order. (*See* Mot. to Amend (Dkt. 33); Order 2–5 (Dkt. No. 59).)

ORDER OF DISMISSAL -2

# DISCUSSION

## I. Evidentiary Hearing and Appointment of Counsel

Petitioner first objects that he has shown the need for an evidentiary hearing and for the appointment of counsel. (Objections 1 (Dkt. No. 81-3).)

### A. Evidentiary Hearing

A prisoner who has developed the factual basis of his claims in state court is entitled to an evidentiary hearing when (1) the petitioner's allegations, if proven, would entitle him to relief, and (2) the trier of fact has not reliably found the relevant facts after a full and fair hearing. *Silva v. Woodford*, 279 F.3d 825, 853 (9th Cir. 2002). An evidentiary hearing is not required on issues that the court can resolve by referring the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998), *cited in Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007). Facts determined by a state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

First, Petitioner argues that he is entitled to an evidentiary hearing because he has been prejudiced by judicial observance of an alleged doctrine that prisoners have only the right to go to jail and the right to serve their sentences. (Objections 3–6 (Dkt. No. 81-3).) To prove prejudice, he describes instances of alleged police misconduct that the state courts upheld as normal police procedure. (*Id.*) The R&R sufficiently addresses these allegations of misconduct in its discussion of Petitioner's substantive claims. (*See* R&R 19, 20–28 (Dkt. No. 79).) Having found no evidence in the record that calls into question the integrity of Petitioner's trial judge or the judges who reviewed his case, the Court finds that an evidentiary hearing on this issue is not necessary.

Second, Petitioner argues that an evidentiary hearing is necessary to review a color

photograph of the motel door, which would allow his defense expert to recreate testimony that was allegedly removed from the trial transcript. (Objections 6 (Dkt. No. 81-3).) Because both Petitioner and his expert, Dr. DeHaan, have submitted affidavits regarding the alleged missing testimony (*see* Pet'r Decl. (Dkt. No. 3-2 at 79–80); DeHaan Decl. (Dkt. No. 3-2 at 84)), the Court finds that an evidentiary hearing to review the color photograph is also not necessary.

**B. Appointment of Counsel**

Petitioner objects to Judge Tsuchida's non-dispositive order denying his request for appointment of counsel. (Objections 7 (Dkt. No. 81).) A district court will not modify or set aside any portion of a magistrate judge's order on a non-dispositive matter unless it is clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). There is no constitutional right to appointment of counsel in a state prisoner's habeas corpus petition. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991). A court has the discretion to appoint counsel, 18 U.S.C. § 3006A(a)(2)(B); 28 U.S.C. § 1915(e)(1), depending on the prisoner's ability to articulate his claim in light of the complexity of the legal issues and the likelihood of success on the petition's merits, *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

In denying Petitioner's motion of appointment of counsel, Judge Tsuchida explained:

> Petitioner requests appointment of counsel because he alleges that his psychological and physical impediments prevent him from comprehending legal issues, maintaining concentration, and accurately remembering events. (Dkt. #40.) However, Petitioner has demonstrated that he is more than capable of articulating his claims in light of their complexity. Furthermore, the habeas petition does not reflect a likelihood of success on the merits. Therefore, the Court does not find that the interests of justice require appointment of counsel in this case.

(Order on Motion 5–6 (Dkt. 59).)

Petitioner argues that Judge Tsuchida should have held a competency hearing to

ORDER OF DISMISSAL -4

determine whether Petitioner's mental illness has hampered his ability to articulate his claims and whether appointment of counsel is necessary. (*See* Objections 7 (Dkt. No. 81).) A district court abuses its discretion when it dismisses a habeas petition on procedural grounds without first developing the factual record after a *pro se* petitioner presents sufficient evidence of incompetence. *See Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005); *see also Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003). In *Allen*, there was sufficient evidence of incompetence when the petitioner presented a declaration from another inmate that he was mentally ill; his own sworn declaration that his mental illness prevented him from understanding the court's instructions; and a letter from a prison psychiatrist treating the petitioner for schizophrenia. *Id.* at 1152–53.

Although Petitioner has submitted evidence of incompetence similar to what the petitioner submitted in *Allen* (*see* Blumer Decl. (Dkt. No. 41); Pet'r Decl. (Dkt. No. 42); Kyllo Decl. (Dkt. No. 43); Elliot Decl. (Dkt. No. 75); Blakely Decl. (Dkt. No. 82); Psychological Records (Dkt. No. 40-3 at 8–57)), his petition, unlike the petition in *Allen*, has not been dismissed on procedural grounds. Instead, the Court has analyzed the substantive challenges in the petition and, therefore, *Allen* is inapposite. Furthermore, the Court finds that Petitioner has not demonstrated a nexus between his mental illnesses, including ADHD, antisocial personality disorder, and bipolar disorder, and his ability to articulate his claims. The medical records provided by Petitioner indicate that he functions well when properly medicated and that the prison physicians monitor his medications accordingly. (*See* Psychological Records (Dkt. No. 40-3 at 40–54).) Finally, although the Court acknowledges the challenges any *pro se* litigant faces when interpreting case law, Petitioner's petition does not reflect a likelihood of success on the merits. *See Weygandt*, 718 F.2d at 954. Therefore, Judge Tsuchida's decision not to hold a

1  hearing and his denial of Petitioner's motion for appointment of counsel was neither clearly

2  erroneous nor contrary to law.

3  **II. Standard of Review**

4        The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs writs

5  of habeas corpus for claims adjudicated in state court. *Woodford v. Garceau*, 538 U.S. 202, 204,

6  207 (2003). A federal court may grant a habeas corpus petition if the state court's decision was

7  either (1) contrary to, or involved an unreasonable application of, clearly established federal law,

8  as determined by the Supreme Court, or (2) based on an unreasonable determination of the facts

9  in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

10        Petitioner objects that Judge Tsuchida failed to apply the proper standard of review to his

11  petition. (Objections 7 (Dkt. No. 81-3 at 8).) First, fleshing out an argument he made in his

12  petition (*see* Am. Pet. 6 (Dkt. No. 12-2)), Petitioner objects that Judge Tsuchida should have

13  applied a de novo standard of review to the first ground, denial of counsel, because the state

14  court of appeals erroneously conducted a harmless error analysis of Petitioner's claim.

15  (Objections 8–9 (Dkt. No. 81-3 at 9–10).)

16        Once the requirement set forth in § 2254(d)(1) is satisfied, a federal court decides a

17  habeas petition by considering the constitutional issues raised de novo. *See Frantz v. Hazey*, 533

18  F.3d 724, 735 (9th Cir. 2008) (*citing Panetti v. Quarterman*, 127 S. Ct. 2842, 2858 (2007)). The

19  Supreme Court has held that the complete denial of counsel is a structural error, not subject to a

20  harmless error analysis. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49 (2006)

21  (*citing Gideon v. Wainwright*, 372 U.S. 335 (1963)). Thus, a state court's decision holding a

22  denial of counsel to be a harmless error is "contrary to" the clearly established law of the

23  Supreme Court under § 2254(d)(1). *See Frantz*, 533 F.3d at 734–35. Federal courts, however,

must read the state court decision carefully to determine the rule that actually governed the state court's analysis. *See id.* at 737–38 (*citing Holland v. Jackson*, 542 U.S. 649, 654–55 (2004); *Woodford v. Visciotti*, 537 U.S. 19, 23–24 (2002)).

Although the state court of appeals gratuitously included a sentence about lack of prejudice in its discussion of Petitioner's denial of counsel claim, the rule governing its analysis was that Petitioner had waived his right to counsel. *See McDonald*, 2004 WL 1147204, at *7. The state court first recited numerous occasions when Petitioner told the trial judge that he did not presently want assistance of counsel. *See id.* The court then concluded: "At no time was Petitioner forced to choose between incompetent or unqualified counsel and self-representation. *At every juncture, when asked about continuing to represent himself, he unequivocally chose to proceed pro se*. McDonald fails to establish any prejudice." *Id.* (emphasis added). The state court of appeals did not conduct a harmless error analysis of Petitioner's denial of counsel claim and, therefore, de novo review is not warranted.

Second, Petitioner makes a blanket argument that because the state courts rejected his five constitutional challenges "without articulating **any** basis in federal law for doing so," Judge Tsuchida should have conducted an "independent review of the entire record and applicable law without deference to the state court reasoning." (Objections 7–8 (Dkt. No. 81-3 at 8–9) (*citing Stewart v. Erwin*, 503 F.3d 488, 494 (6th Cir. 2007)).)

Compliance with § 2254(d), however, "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). It is only when the state court decides an issue on its merits without articulating any reasoning that a federal court should conduct an "independent review" of the record to

determine whether the state court's decision was objectively unreasonable. *See Delgado v. Lewis,* 223 F.3d 976, 981–82 (9th Cir. 2000) (federal court conducts independent review rather than de novo review when state court does not supply reasoning for its decision); *cf. Stewart*, 503 F.3d at 493–94 (independent review, unlike de novo review, "remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA").

It is not necessary for the Court conduct an independent review of the record because the state courts provided reasoned decisions for rejecting each of the constitutional violations alleged by Petitioner on appeal. *See McDonald*, 2004 WL 1147204, at *2–4, *7 (rejecting claims regarding inability to confront witnesses, insufficient evidence, and denial of counsel); *see also* Wash. S. Ct. Ruling Den. Review 3–4 (Dkt. No. 23, ex. 4) (rejecting claims regarding destruction of exculpatory evidence and deprivation of right to appeal). Furthermore, as addressed in the individual discussion of each ground in the R&R and in this Order, there are no relevant Supreme Court cases that conflict with the reasoning of the state courts on grounds I through V of Petitioner's petition. Therefore, AEDPA's deferential standard of review controls this Court's review of the state court decisions.

**III. Right to Counsel**

Petitioner next objects that Judge Tsuchida failed to properly consider his arguments that the trial judge forced him to waive his right to assistance of counsel and prevented him obtaining counsel of his choice. (Objections 11–14 (Dkt. No. 81-3 at 12–15)).

**A. Waiver of Right to Counsel**

The R&R properly rejects Petitioner's claim that he involuntarily waived his right to assistance of counsel to "avoid the reappointment of the same attorney who's [sic] initial

1  appointment was found to constitute a conflict of interest by the Washington Supreme Court,

2  requiring reversal of his conviction." (*See id.* 11, 12.)

3       The Sixth Amendment grants a criminal defendant the right to self-representation if he

4  voluntarily, knowingly, and intelligently elects to do so. *See Martinez v. Court of Appeal of*

5  *California*, 528 U.S. 152, 153 (2000). A waiver is knowing and intelligent when the defendant is

6  made aware of (1) the nature of the charges against him, (2) the possible penalties, and (3) the

7  dangers and disadvantages of self-representation. *United States v. Farhad*, 190 F.3d 1097, 1099

8  (9th Cir. 1999). A criminal defendant who has waived his right to assistance of counsel does not

9  have a constitutional right to standby counsel. *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir.

10  1983). Rather, the decision to appoint standby counsel is left to the sound discretion of the trial

11  judge. *Id.*

12       Maintaining that his waiver was invalid, Petitioner reiterates the argument from his §

13  2254 petition that the trial judge forced him to waive his right to assistance of counsel by making

14  Petitioner to choose between a conflicted attorney and self-representation. (Objections 11, 12

15  (Dkt. No. 81-3 at 12, 13); Am. Pet. 2, 7–10 (Dkt. No. 12-2).) Petitioner has not, however,

16  explained how his former standby counsel, Gary Gaer, still had an actual, or even potential,

17  conflict of interest with him. In its opinion reversing Petitioner's first conviction, the state

18  supreme court described Mr. Gaer's conflict with Petitioner as

19       the one created when the prosecutor's office was assigned to represent Gaer in
        the civil suit brought by McDonald during the same time period the prosecution
20       [against McDonald] was pending. . . . The representation of Gaer by the
        prosecutor's office undermine[d] the duties Gaer owed to McDonald, including
21       the attorney-client privilege.

22  *McDonald*, 22 P.3d at 795. The civil suit against Mr. Gaer was no longer pending during

23  Petitioner's second trial, and the prosecutor's office was no longer representing Mr. Gaer.

ORDER OF DISMISSAL -9

Petitioner has never described how, or even voiced concerns that, Mr. Gaer might have actual or potential conflicts that would interfere with his duty of loyalty to Petitioner. Instead, he has expressed his displeasure with Mr. Gaer's unpredictability and has stated that he instead wished to represent himself. (See Tr. 9–10, Oct. 4, 2001 (Dkt. No. 6 at 75–76).)

Reiterating another contention from his §2254 petition, Petitioner also argues that he unequivocally requested trial counsel on several occasions. (Objections 12–13 (Dkt. No. 81-3 at 13–14); Am. Pet. 8, 9 (Dkt. No.12-2).) In a case in which a defendant asserted his right to represent himself only to avoid being appointed a particular attorney, the Ninth Circuit stated that a defendant is not denied counsel when his request to represent himself is conditional but unequivocal. *Adams v. Carroll*, 875 F.2d 1441, 1444–45 (9th Cir. 1989).[3] In this case, rather than unequivocally requesting counsel, Petitioner unequivocally stated that he wanted to represent himself while making pretrial motions, that he presently requested the assistance of standby counsel, and that he would be requesting the appointment of counsel before trial. (*See, e.g.*, Tr. 67, Oct. 3, 2001 (Dkt. No. 6 at 63).) It was within the discretion of the trial judge not to appoint standby counsel. *See Locks*, 703 F.2d at 408. Moreover, Petitioner's conditions on his right to represent himself—that he was allegedly only representing himself to avoid appointment of Mr. Gaer or that he would be requesting counsel at a future date—did not change the fact that his request for self-representation was unequivocal. *See Carroll*, 875 F.2d at 1445.

Petitioner chose to proceed without representation with his eyes wide open. *See Faretta*

---

3. The Ninth Circuit explained that the very reason a request must be unequivocal is to prevent placing the trial court in an impossible position when a defendant vacillates between requesting to represent himself and requesting to be represented by counsel: If the court appoints counsel to a defendant vacillating between requests for self-representation and representation by counsel, the defendant could argue on appeal that his intermittent requests for self representation show that he was denied the right to represent himself; but if the court permits self-representation, the defendant could claim he had been denied the right to counsel. *Adams v. Carroll*, 875 F.2d at 1444.

*v. California,* 422 U.S. 806, 835 (1975). The trial judge engaged in a colloquy with Petitioner about the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation. (*See* Tr. 4–8, Oct. 4, 2001 (Dkt. No. 6 at 70–74).)

> THE COURT: You understand, Mr. McDonald, that you have the constitutional right to represent yourself if you choose to do that?
> DEFENDANT: Yes, ma'am.
> THE COURT: And you're exercising that right.
> DEFENDANT: Yes, ma'am.
> THE COURT: I can allow you to do that only if I'm sure that you understand the hazards and disadvantages that you face by doing so.
> DEFENDANT: Uh-huh.
> . . . .
> THE COURT: [Y]ou understand when [sic] you're charged in this case?
> DEFENDANT: Yes.
> THE COURT: And you understand that if you're found guilty of the crime that you're charged with, you will be facing a sentence of life in prison without the possibility of parole.
> DEFENDANT: Right.
> THE COURT: You understand that.
> DEFENDANT: Yes.
> THE COURT: Okay. Do you understand that if you choose to represent yourself, Mr. McDonald, you're going to be on your own?
> DEFENDANT: Uh-huh.
> THE COURT: You're going to be all by yourself representing yourself.
> DEFENDANT: Uh-huh.
> THE COURT: You realize that.
> DEFENDANT: Yeah, well, on the hearing on the 18th I'm petitioning for an investigator and things like that. Which you can deny, you know.
> THE COURT: But in terms of the representation, in terms of making the legal decisions, standing up in court making the objections, offering the evidence, you're on your own.
> DEFENDANT: Oh.
> THE COURT: I can't help you, you understand that.
> DEFENDANT: Oh, I know you can't. You mean, from here on out.
> THE COURT: Yeah. I can't assist you or advise you.

(*Id.* 4, 5–6.) Throughout the colloquy, the trial judge repeatedly asked Petitioner if he would like to be appointed counsel:

> DEFENDANT: I don't want counsel.
> THE COURT: You don't want an attorney.

ORDER OF DISMISSAL -11

DEFENDANT: No.

. . . .

THE COURT: [R]ight now, it's Thursday afternoon the 4th of October. And I'm asking you whether you want an attorney to represent you, Mr. McDonald. That's my question to you this afternoon.

DEFENDANT: No, I want to go with what I'm doing . . . with the policy and procedure memorandums and stuff like that.

(*Id.* 6–7, 9–10). The trial judge indicated that she thought Petitioner would be "far better off represented by a trained lawyer." (*Id.* 10.) When she realized that Petitioner might request counsel later, she cautioned him about the difficulty of locating an attorney closer to trial and asked him to factor that into his decision to represent himself. (*Id.* 10–11.) The trial judge then explicitly asked Petitioner if he was voluntarily deciding to proceed without counsel, which he replied he was. (*Id.* 12.) After she again warned him that it would be increasingly more difficult to obtain counsel the closer he got to trial, Petitioner explained he was choosing to represent himself because he wanted to continue controlling his defense. (*See id.* 14.) As his trial date approached, Petitioner did not request appointment of counsel. To the contrary, as explained in the R&R, after October 4, 2001, when the judge repeatedly inquired about Petitioner's need for counsel, Petitioner unequivocally responded that he was representing himself. (*See* R&R 11–12, 14, 15 (Dkt. No. 79).)

Accordingly, the state court of appeals reasonably determined that Petitioner had knowingly and intelligently waived his right to counsel.

**B. Right to Counsel of One's Choice**

Petitioner also objects that the R&R failed to address his argument that the trial court prohibited him from seeking counsel of his choice contrary to Supreme Court precedent from *Gonzalez-Lopez*, 548 U.S. 140.

On October 26, 2001, the trial court issued an order prohibiting Petitioner

ORDER OF DISMISSAL -12

from using Skagit County public funds for the purpose of photocopying or mailing pleadings, letters or documents to persons other than those listed on the State or Defendant's witness lists or experts previously identified to the courts, the legal aid agencies of the American Civil Liberties Union, Columbia Legal Services, Washington Protection Advocacy Systems and to any attorneys.

(Am. Order 3 (Dkt. No. 81-4 at 28).) In his *pro se* supplemental brief to the state court of appeals, Petitioner argued that the trial court's order prevented him from contacting attorneys "who may have agreed to represent him on a pro bono basis or be compensated by a third party." (Def.'s Br. 8 (Dkt. No. 29-3 at 20).) Without specifically addressing Petitioner's argument, the court of appeals decided that he had mischaracterized the facts and had not been prohibited from obtaining counsel of his choice. *McDonald*, 2004 WL 1147204, at *7.

The Sixth Amendment guarantees the defendant the right to be represented by a qualified attorney whom the defendant can afford to hire or who is willing to represent the defendant even though he is without funds. *Gonzalez-Lopez*, 548 U.S. at 144. The right to counsel of choice does not extend, however, to defendants who require counsel to be appointed for them. *Id.* at 151.

Petitioner acknowledges that he "may not have a Constitutional right to contact private attorneys at state expense." (Objections 14 (Dkt. No. 81-3 at 15).) Indeed, the Sixth Amendment does not require that the government provide an indigent defendant with the necessary funds to locate an attorney who is willing to represent him. *Cf. Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 ("Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond 'the individual's right to spend his own money to obtain the advice and assistance of . . . counsel.'" (citation omitted)). Although Petitioner claims that he communicated with two attorneys about representing him (Objections 13 (Dkt. No. 81-3 at 14)), Petitioner cannot identify one instance when he asked to be represented by counsel of his choice and was refused. Therefore, the state

court's decision that Petitioner was not denied counsel of his choice was not contrary to, or an unreasonable application of, Supreme Court precedent and was not based on an unreasonable determination of the facts.

**IV. Failure to Preserve Evidence**

In his fourth objection to the R&R, Petitioner reiterates the arguments he made in his § 2254 petition that the police failed to preserve material exculpatory evidence when they failed to package his clothing and swabs of his hands in sealed containers. (*Id.* 17; Am. Pet. 17, 18–19 (Dkt. No. 12-2).) Petitioner argues that the police failed to preserve this evidence in bad faith to prevent the crime laboratory from adequately testing the evidence for petroleum products. (Objections 19 (Dkt. No. 81-3 at 20); Am. Pet. 17–19, 20–21 (Dkt. No. 12-2).)[4]

A due process violation occurs when either (1) the state suppresses or fails to disclose material exculpatory evidence, *California v. Trombetta*, 467 U.S. 479, 489 (1984), or (2) the police destroy potentially useful evidence in bad faith, *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988).

First, Petitioner argues that his clothing and the swabs of his hands from the night of his arrest were material exculpatory evidence. (Objections 17 (Dkt. No. 81-3 at 18).) Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Because the police officers both stated in their police reports and testified at trial that Petitioner and his clothing smelled like gasoline (*see* Objections 17, 18–19 (Dkt. No. 81-3 at 18, 19–20)), Petitioner failed to show a reasonable probability that, had the evidence

---

4. As explained in more detail in the R&R's recitation of the facts relating to this claim, petroleum products, if present, will eventually evaporate from evidence not stored in sealed containers. (*See* R&R 16–17 (Dkt. No. 79).)

properly preserved, the result of his trial would have been different. Given the officers' corroborating testimony, the state court reasonably concluded that this evidence was not material exculpatory evidence.

Second, in the alternative, Petitioner argues that the clothing and swabs were potentially useful evidence that the investigating officers destroyed in bad faith. (*Id.* 19.) Evidence is potentially useful if no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant. *Youngblood*, 488 U.S. at 57. Petitioner's clothing and the swabs of his hands could have been subjected to tests, the results of which, if negative for petroleum, might have exonerated the defendant if the jury chose not to believe testimony of the two officers who smelled gasoline on Petitioner. The state court reasonably concluded that the evidence was potentially useful.

Even if evidence is potentially useful, however, the improper collection of such evidence violates due process only if Petitioner can show that the officers acted in bad faith. *See Youngblood*, 488 U.S. at 57–58. Petitioner argues that the officers deliberately destroyed the evidence to conceal "the fact it never contained gasoline vapors" and waited over two months to send the evidence to the crime laboratory "[j]ust to ensure that [their] evaporation theory would fly." (Objections 16, 19–20 (Dkt. No. 81-3 at 17, 20–21).) The dispositive issue for due process is the state of mind of police at the time the evidence was lost or destroyed. *Richter v. Hickman*, 521 F.3d 1222, 1235 (9th Cir. 2008). Given the acknowledged testimony that both the officers believed they were correctly collecting the evidence in accord with their normal practice and learned only later of their mistake (*see* Am. Pet. 14 (Dkt. No. 12-2)), Petitioner has established little more than the negligence of two officers inexperienced with arson investigations. Negligence does not establish bad faith. *See Youngblood*, 488 U.S. at 58 (holding that no due

process violation occurred when "the failure of the police to refrigerate the clothing and to perform tests on the semen samples can at worst be described as negligent"). The state court reasonably concluded that Petitioner had not met his burden of showing that the officers acted in bad faith. (*See* R&R 19 (Dkt. No. 79).)

Therefore, as explained in the R&R, the state supreme court commissioner's conclusion that the contamination of the swabs did not violate Petitioner's due process rights was not contrary to, or an unreasonable application of, Supreme Court precedent and was not based on an unreasonable determination of the facts.

**V. Right to Confront Witnesses**

Petitioner does not object to the conclusion in the R&R that his Sixth Amendment right to confront witnesses against him was not violated. The Court has reviewed the record and agrees with Judge Tsuchida's analysis. *See* 28 U.S.C. § 636(b)(1)(C).

**VI. Right to Appeal**

With regard to his fourth ground, violation of his right to appeal, Petitioner objects that the R&R "adopted incomplete and erroneous State Court findings of fact and conclusions of law" and "[f]ailed to properly apply the correct United States Supreme Court legal standards." (Objections 26 (Dkt. No. 81-3 at 27).)

The factual errors cited by Petitioner are irrelevant to the analysis of whether his right to appeal was violated. For example, Petitioner points out the state court of appeals, not the trial court, refused to release the color photograph of the door, thereby preventing Dr. DeHaan from reconstructing the testimony allegedly missing from the court transcript. (*Id.*)[5] The identity of the

---

5. Specifically, Petitioner objects to the following incorrectly stated fact: "Petitioner states that the trial court and the Skagit County Clerk have refused his requests to send color copies of the photograph exhibits to Dr. DeHaan so Dr. DeHaan could reconstruct his testimony." (R&R 29 (Dkt. No. 79).)

court that refused Petitioner's motion for a copy of the photograph, however, is immaterial to the analysis of whether testimony was missing from the transcript. Similarly, Petitioner disputes the state court's conclusion that there was no "evidence showing what Dr. DeHaan's missing testimony would have included" when Petitioner's affidavit stated explicitly that the transcript was missing testimony that the door had never caught fire or burned. (*Id.* 27; *see also* Pet'r Decl. (Dkt. No. 3-2 at 79–80).) This "evidence," however, would not have changed the supreme court commissioner's reasoning that nothing in the trial transcript indicated that there was missing testimony; that the transcript included testimony from Dr. DeHaan that the door *was* damaged; or that Dr. DeHaan's affidavit regarding the substance of the missing testimony was ambiguous. (*See* R&R 29, 30 (Dkt. No. 79).) Neither the R&R nor the state court decision, therefore, was *based* on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner also argues that Judge Tsuchida should have evaluated (1) the value of the transcript to the defendant in connection with his appeal and (2) the availability of alternative devices that would fulfill the same functions as a transcript. (Objections 27–28 (Dkt. No. 81-3 at 28–29) (*citing Britt v. North Carolina,* 404 U.S. 226, 227 n.2 (1971)).) Putting aside that the cited test presupposes that the transcript is incomplete, which Petitioner has never met the burden of showing, the Court agrees with Judge Tsuchida that the allegedly missing testimony had negligible value in connection with Petitioner's appeal of the sufficiency of evidence. Petitioner has not explained how additional testimony from Dr. DeHaan would have allowed him to construct a sufficiency argument that would have permitted the state courts to ignore the prosecution's evidence that the door was on fire. (R&R 31 (Dkt. No. 79).) Because the missing testimony would have had such slight value to Petitioner's appeal, evaluating the availability of

1    alternative devises was not necessary. It was neither contrary to nor an unreasonable application

2    of Supreme Court precedent for the state courts to conclude that Petitioner was not prejudiced by

3    the allegedly missing testimony.

4    **VII. Sufficiency of Evidence**

5         Finally, Petitioner objects that Judge Tsuchida should have analyzed whether there was

6    sufficient evidence to support his conviction of first-degree arson under the applicable test used

7    in the Ninth Circuit. (Objections 22–23 (Dkt. No. 81-3 at 23–24).)

8         In Washington, a person is guilty of first degree arson if he knowingly and maliciously

9       (a) Causes a fire or explosion which is manifestly dangerous to any human life, including firemen; or

10      (b) Causes a fire or explosion which damages a dwelling; or
       (c) Causes a fire or explosion in any building in which there shall be at the time a

11      human being who is not a participant in the crime; . . . .

12    Wash. Rev. Code § 9A.48.020(1).[6] Although a jury need not unanimously agree by which

13    alternative means the defendant committed first-degree arson, Washington law does require

14    sufficient evidence to support each alternative. *See State v. Ortega-Martinez*, 881 P.2d 231, 233,

15    234–35 (Wash. 1994); *cf. Schad v. Arizona*, 501 U.S. 642, 631–32 (1991) (plurality opinion)

16    (stating that the Constitution does not require a jury to decide unanimously the means by which a

17    defendant committed a crime).

18         In reviewing an insufficient evidence claim in a habeas proceeding, a federal court must

19    determine whether a state court determination that the evidence was sufficient to support a

20    conviction was an objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307

21    (1979). *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (as amended). Under *Jackson*,

22

23       6. The state did not charge Petitioner with the fourth alternative means, causing "a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds." *See* Wash. Rev. Code § 9A.48.020(1)(d).

1  evidence is sufficient if "*any* rational trier of fact could have found the essential elements of the

2  crime beyond a reasonable doubt." 443 U.S. at 319. This standard is extremely deferential. *See*

3  *Juan H.*, 408 F.3d at 1274–75. When faced with a record that could lead to conflicting

4  inferences, the court must defer to the presumption that the trier of fact resolved any conflicts in

5  favor of the prosecution. *Jackson*, 443 U.S. at 326.

6      Petitioner argues that Judge Tsuchida should have addressed the insufficient evidence

7  claim using the five guidelines articulated by the Ninth Circuit to evaluate claims under *Jackson*:

8      (1) The focus of the inquiry is on the state court decision;
       (2) Even with the deference due by statute to the state court's determinations, the
9      federal habeas court must look to the "totality of the evidence" in evaluating the
       state court's decision;
10     (3) The failure of the state court to consider at all a key argument of the
       defendant may indicate that its conclusion is objectively unreasonable; however,
11     the paucity of reasoning employed by the state court does not itself establish that
       its result is objectively unreasonable;
12     (4) The failure of a state court to give appropriate weight to all of the evidence
       may mean that its conclusion is objectively unreasonable; and
13     (5) The absence of cases of conviction precisely parallel on their facts does not,
       by itself, establish objective unreasonableness.

14  *Sarausad v. Porter*, 479 F.3d 671, 678, *rev'd on other grounds by* No. 07-772, 2009 WL 129033

15  (U.S. Jan. 21, 2009). The Ninth Circuit, however, has clarified that "these guidelines are useful,

16  though not all of them will necessarily apply in any particular case." *Id.* The R&R considers

17  Petitioner's arguments with the thoroughness that the guidelines are intended to ensure. (*See*

18  R&R 33–34 (Dkt. No. 79).)

19      In contrast, the analysis of the court of appeals into whether there was sufficient evidence

20  to support each of the elements of first-degree arson was regrettably brief. *See McDonald*, 2004

21  WL 1147204, at *7. The court of appeals offered only: "Because the facts established by Edith

22  [Clarke] and the cabdrivers are sufficient to support McDonald's conviction, we reject this

23

ORDER OF DISMISSAL -19

argument." *Id.* The brevity of the state court's reasoning, however, does not itself establish that its result was an objectively unreasonable application of *Jackson. See Sarausad*, 479 F.3d at 678.

The testimony referenced by the court of appeals was sufficient to establish causation, an element of each of the alternatives in the arson statute. *See* Wash. Rev. Code § 9A.48.020(1). One of the cabdrivers, Mr. Campbell, testified that, on the night of the fire, he drove Petitioner to a gas station to rent a gas can and purchase gasoline.[7] *McDonald*, 2004 WL 1147204, at *1. Another cabdriver, Mr. Hackley, testified that, later that night, he picked up Petitioner with a white bucket containing a liquid that smelled like gasoline. *Id.* According to the state court of appeals, Ms. Clarke testified that

> [a]t around 5:00 a.m., she woke after hearing McDonald talking to himself about starting a fire. While waking her husband, she heard a plop and saw flames through her window. She immediately went to the door and saw McDonald standing on the other side of the fire smoking a cigarette with a white bucket beside him.

*Id.* Despite witnesses' conflicting physical descriptions of Petitioner to the police (*see* Objections 18 n.8, 23 (Dkt. No. 81-3 at 19, 24)), it was not an objectively unreasonable application of *Jackson* for the state court to conclude that a reasonable juror could have found that Petitioner caused the fire with the gasoline he purchased that night. The question, thus, becomes whether there is sufficient evidence to support a conviction based on each of the three alternative means of committing first-degree arson under the statute.

Petitioner argues briefly that there is insufficient evidence to support a conviction under § 9A.48.020(1)(a), fire manifestly dangerous to human life. (Objections 24 (Dkt. No. 81-3 at 25).) Under Washington law, the determination of whether a fire is manifestly dangerous is a question

---

7. In the section of his petition addressing the confrontation clause, Petitioner challenges Mr. Campbell's credibility. (*See* Am. Pet. 26–27 (Dkt. No. 12-2).) Under *Jackson*, however, assessment of witness credibility is generally beyond scope of review. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

of fact involving considerations like the presence of occupants, combustibility, and proximity to other structures. *See State v. Young,* 550 P.2d 1, 4 (Wash. 1976). Petitioner argues that the fire was not manifestly dangerous because, *inter alia*, he was able to drag the burning mat away from the door; the fire took only an ice bucket of water to extinguish; and a fire truck arrived within two minutes. (Objections 24 (Dkt. No. 81-3 at 25).) Under Washington law, however, manifest danger is not measured by the harm done but rather by the potential for harm. *State v. Plewak*, 732 P.2d 999, 1004 (Wash. Ct. App. 1987). Given that the fire was set outside the only exit to the motel room where Ms. Clarke and her family slept, a reasonable juror could have concluded that the potential for harm was sufficient to find the fire manifestly dangerous to human life.

Petitioner does not argue specifically that there was insufficient evidence to support a conviction under § 9A.48.020(1)(b), fire damage to a dwelling. Under Washington law, a dwelling is "any building or structure, though movable or temporary, or a portion thereof, which is used or ordinarily used by a person for lodging." *See* Wash. Rev. Code § 9A.04.110(7). Because Ms. Clarke testified that when she opened the door to her motel room, the door, threshold, and mat were on fire,[8] a reasonable juror could have found beyond a reasonable doubt that there was fire damage to a dwelling.[9]

Petitioner dedicates most of his objection to arguing that there was insufficient evidence to support a conviction under § 9A.48.020(1)(c), fire in a building that contains a person who is not a participant in the crime. In short, he argues the state court of appeals failed to appropriately weigh evidence that fire never entered the building: "The carpet was never burned. No smoke

---

8. Petitioner challenges the credibility of Ms. Clarke, claiming: "[S]he 'forgot' to tell the arson investigator her door was on fire; she offered to 'change her story' if the petitioner bought her a new van . . .; she changed her testimony and was untruthful." (Objections 24 (Dkt. No. 81 at 25).) As noted above, under *Jackson*, a jury's credibility determinations are entitled to near-total deference. *See Schlup*, 513 U.S. at 330.

9. This conclusion is further supported by testimony of Patricia Stevens, the motel manager, that the door required scraping and sanding to fix.

ORDER OF DISMISSAL -21

damage inside the room. The state's arson expert attested that the door was only 'beginning to burn.'" (Objections 24–25 (Dkt. No. 81-3 at 25–26).)

Petitioner misunderstands the deferential standard of review with which a state court reviews a jury finding for sufficient evidence. *See State v. Green,* 616 P.2d 628, 632 (Wash. 1980) (evidence is sufficient to support a jury's verdict if a rational person viewing the evidence in the light most favorable to the state could find each element beyond a reasonable doubt); *accord Jackson*, 443 U.S. at 319. After considering Petitioner's stronger arguments, the state court of appeals pointed out conflicting evidence from Ms. Clarke, who testified that the door was on fire when she opened it. *McDonald*, 2004 WL 1147204, at *4. It was not an "objectively unreasonable" application of *Jackson* for the state court to defer to the presumption that the jury resolved this conflict in favor of the prosecution. *See id.* ("Substantial evidence support the jury's conclusion that when Edith [Clarke] opened the door, the flames entered the [building]."); *see also Jackson*, 443 U.S. at 326. Moreover, Petitioner practically concedes that the door was on fire by highlighting the arson expert's testimony that the door was "beginning to burn." (Objections 25 (Dkt. No. 81-3 at 26).)

The state court's holding that sufficient evidence supported Petitioner's conviction was neither contrary to, nor an unreasonably application of, Supreme Court precedent nor based on an unreasonable determination of the facts.

## CONCLUSION

The remaining arguments that Petitioner makes in his Objections are not new and are properly addressed in the R&R. Petitioner has failed to meet the standard required by the AEDPA. Accordingly, the Court, having reviewed the relevant documents submitted by the parties, the governing law, and the balance of the record, does hereby find and ORDER:

ORDER OF DISMISSAL -22

(1)      The Court adopts the Report and Recommendation (Dkt. No. 79);

(2)      Petitioner's request for appointment of counsel is DENIED (Dkt. No. 40);

(3)      Petitioner's petition for writ of habeas corpus (Dkt. No. 12) is DENIED and DISMISSED with prejudice.

(4)      The Clerk of Court is directed to send copies of this Order to the parties and to Magistrate Judge Brian A. Tsuchida.

DATED this 6th day of February, 2009.

JOHN C. COUGHENOUR
United States District Judge

ORDER OF DISMISSAL -23